IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

BECKY A. HARDIN                                                                    PLAINTIFF

v.                          CIVIL NO. 14-5305

CAROLYN W. COLVIN, Acting Commissioner
Social Security Administration                                                   DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Becky Hardin, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for supplemental security income (SSI) under the provisions of Title XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I. Procedural Background**

Plaintiff protectively filed her application for SSI on October 25, 2011, alleging disability since April 1, 2010, due to anxiety, lupus, and bipolar disorder. (Tr. 14, 163). An administrative hearing was held on December 5, 2012, at which Plaintiff appeared with counsel and testified. (Tr. 32-75).

By a written decision dated June 7, 2013, the ALJ determined Plaintiff had the following impairments:

> Systemic lupus erythematosus (SLE), fibromyalgia syndrome, osteoarthritis of the bilateral feet, degenerative disc disease of thoracic spine, asthma, trochanteric bursitis, hypertension, a history of seizures, major depressive disorder, borderline personality disorder, and obsessive compulsive disorder (OCD).

(Tr. 16). After reviewing all of the evidence presented, the ALJ determined Plaintiff's impairments did not meet or equal the level of severity of any impairment in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 16-18). The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform light work with the following limitations:

> She can only climb ramps/stairs, can never climb ladders/ropes/scaffold, and can only occasionally balance, stoop, kneel, crouch, and crawl. She can only occasionally operate foot controls and must avoid concentrated exposure to temperature extremes, humidity, fumes, odors, dusts, gases, poor ventilation, and hazards including driving as part of work. Further, the claimant is able to perform simple, repetitive tasks with incidental interpersonal contact and direct, concrete supervision.

(Tr. 18).

With the help of a vocational expert (VE), the ALJ found Plaintiff could not perform her past relevant work (PRW), but could perform the requirements of the representative occupations of warehouse checker, merchandise marker, small product assembler, surveillance systems monitor, charge account clerk, and addressing clerk. (Tr. 24-25). The ALJ concluded Plaintiff was not disabled as defined by the Act during the relevant time period. (Tr. 26).

Plaintiff next requested a review of the hearing decision by the Appeals Council, which denied the request on August 1, 2014. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc. 1). The parties consented to the jurisdiction of this Court on October 7, 2014. (Doc. 6).  Both parties have filed appeal briefs, and the case is ready for decision.  (Docs. 11, 12).

**II. Applicable Law**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind

would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

A claimant has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A Plaintiff must show her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an

impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. § 404.1520. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her RFC.

### III. Discussion

Plaintiff argues the ALJ erred by: (1) improperly evaluating Plaintiff's credibility; (2) rejecting the opinion evidence; and (3) formulating an RFC that was not supported by substantial evidence. (Doc. 11, pp, 6-8).

#### A. Credibility

The ALJ was required to consider all of the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id.

The ALJ addressed the Polaski factors in the written decision, and found Plaintiff's subjective complaints only partially credible because the record showed Plaintiff was a caretaker for her mother and young nephews, socialized often, was able to complete relatively normal daily activities, continued to consume alcohol against medical advice, and expressed a plan to return to

work. (Tr. 17, 19-20). The ALJ also noted evidence which showed Plaintiff's hip pain improved with injections and Neurontin, her treatment for her conditions was conservative, and her anxiety, rash, and hypertension were controlled by medications. (Tr. 19-22). These were valid reasons for the ALJ to partially discount Plaintiff's subjective complaints. See e.g. Turpin v. Colvin, 750 F.3d 989, 993 (8th Cir. 2014).

Accordingly, the undersigned finds the ALJ's credibility analysis is based on substantial evidence.

   B. RFC Assessment

Plaintiff believes the ALJ erred by not assigning more weight to an opinion letter from a social worker who treated Plaintiff, and failed to include sufficient accommodations in the RFC. (Doc. 11, pp. 7-8).

RFC is the most a person can do despite that person's limitations, and is assessed using all relevant evidence in the record. 20 C.F.R. §404.1545(a)(1). This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393. F.3d 798, 801; Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §404.1545(a)(3). A claimant's RFC is a medical question, therefore, an ALJ's determination concerning a claimant's RFC must be supported by some medical evidence that addresses the claimant's ability to function in the workplace. Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001); Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). Even though the RFC assessment draws from medical sources, it is ultimately an administrative determination. 20 C.F.R. §§ 416.927(e)(2), 416.946; Cox v. Astrue, 495 F.3d 614 (8th Cir. 2007). In evaluating a claimant's

RFC, an ALJ is not limited to considering medical evidence exclusively, but should "consider at least some supporting evidence from a professional." Lauer, 245 F.3d at 704.

The ALJ appropriately assigned little weight to the one paragraph letter from Dana Ilie-Stout, a licensed counselor and social worker at Ozark Guidance, because her opinions were conclusory and she was not an acceptable medical source. (Tr. 23-24). Ms. Ilie-Stout's opinions also were not consistent with Plaintiff's treatment notes from Ozark Guidance. See Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000). As the ALJ noted, Plaintiff made progress while in counseling, her manic symptoms were controlled by medications, and her depression and anxiety improved with treatment. (Tr. 22-23).

Notes from Dr. Maria Melo, who treated Plaintiff at Ozark Guidance, show Plaintiff's depression had improved on Pristiq by November of 2011. (Tr. 444). In February of 2011, Plaintiff rejected using an antidepressant because her depression was better. (Tr. 447). In May of 2012, Dr. Melo restarted Plaintiff's Seroquel, but noted Plaintiff was looking for a job and trying to be more active. (Tr. 498). A follow-up treatment note from October of 2012 described Plaintiff's daily activities as:

> [She] takes care of [her] mother, fixes all the meals, does the housekeeping. Likes to read, plays computer games, visits with a good friend who has moved back. Actually is getting out socially more.

(Tr. 608). In November of 2012, Plaintiff reported she only occasionally took Vistaril for anxiety, was "doing pretty well . . . getting done what she has to," and had increased her exercise to support her mental health. (Tr. 667). In group therapy sessions, Ms. Ilie-Stout also noted Plaintiff was clinically stable and progressing well throughout 2012. (Tr. 488, 491, 616, 639, 642, 672).

In May of 2013, Plaintiff reported she was exercising, and "having to do a lot of childcare and babysitting." (Tr. 686). According to Plaintiff, her energy was good even though she had some pain, she was able to complete tasks like grocery shopping, and spent time playing a lot of games on her phone. (Tr. 686). Plaintiff's Vistaril and Seroquel were increased because Plaintiff believed "it works." (Tr. 688). In June of 2013, Dr. Edwin Jones, a physician at Ozark Guidance, noted Plaintiff's depression was moderate, and she was "better with increase of Seroquel." (Tr. 676-677).

The ALJ's conclusion that Plaintiff's anxiety and depression were not disabling, despite Ms. Ilie-Stout's opinions, was appropriate because Ms. Clay was not an acceptable medical source, Plaintiff's treatment notes showed her condition was stable and had improved with medication, and she was able to maintain relatively normal daily activities, such as being a caretaker and socializing with friends. 20 C.F.R. § 416.913(d); see e.g., Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005). Ms. Ilie-Stout's opinion that Plaintiff's conditions were disabling was also conclusory, and not entitled to deference from the ALJ. Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005).

As for Plaintiff's physical conditions, the record shows her rash resolved over time with steroid ointments, her hip pain was controlled by injections, and her joint pain had improved with Neurontin, Lyrica, and tramadol by May of 2012. (Tr. 472-475). Throughout the relevant time period, she complained of intermittent arm pain and ankle pain, and some tenderness was noted on exams, but she had normal range of motion and muscle strength. (Tr. 318-319, 353, 422, 474, 476, 482, 521, 525).

In October of 2012, Plaintiff was treated at a clinic, after discontinuing her treatment for lupus and fibromyalgia, where her exam was normal except for having patchy skin. (Tr. 650). In November of 2012, she established care with Dr. Roy Sampson for her fibromyalgia and lupus.

She reported Neurontin controlled her pain, although she felt back pain if she stood for a prolonged time, and complained of chronic ankle and hand pain. (Tr. 650-651). Her neurological and musculoskeletal exam was normal, but she had some tenderness in her hands, discoloration in her skin, and was positive for fibromyalgia trigger points. (Tr. 656). Dr. Sampson diagnosed Plaintiff with moderately controlled lupus, stable depression, hip bursitis, and poorly controlled fibromyalgia. (Tr. 657). He prescribed a hip injection and increased her Neurontin, but released Plaintiff to normal activities after a few days of rest, and encouraged her to resume exercising to improve her fibromyalgia. (Tr. 657).

Although Plaintiff complained of disabling mental conditions and pain from lupus and fibromyalgia, her exams were relatively normal, and she reported her treatment improved her mental conditions and pain. At her most recent medical visit with Dr. Sampson, she was released to normal activities. Even though Dr. Sampson noted she had some problems with her hands, the record shows her hobbies included playing computer and phone games, painting, and crocheting, and it was reasonable for the ALJ not to include additional accommodations for a hand impairment. (Tr. 195, 608, 686).

While there is evidence Plaintiff had limitations from her impairments, the RFC assessment is supported by Plaintiff's treatment notes, and consistent with the non-examining consultants opinions, who believed Plaintiff could perform light work with "simple and repetitive tasks in an environment in which interpersonal contact is only incidental." (Tr. 389, 420, 465-466). In addition, the ALJ accounted for Plaintiff's subjective complaints of foot pain and postural restrictions even though these limitations were not established by the medical evidence. Finally, Plaintiff's daily activities show she was not as limited as alleged. She was a caretaker for her

family, completed normal tasks such as cleaning and grocery shopping, and socialized with friends. (Tr. 69-70, 284, 444, 533, 608, 686). The ALJ reasonably concluded the medical evidence and Plaintiff's self-reported activities were not consistent with having disabling conditions.

Accordingly, the undersigned finds the ALJ's RFC determination is based on substantial evidence.

### C. Step Five

Following the hearing, the ALJ posed a hypothetical question to a VE consistent with the RFC determination through interrogatories. (Tr. 243). In response, the VE stated Plaintiff could perform the representative occupations of warehouse checker, merchandise marker, small products assembler, charge account clerk, surveillance systems monitor, and addressing clerk. (Tr. 248-250). Such evidence, based on a hypothetical question consistent with the record, constitutes substantial evidence. See Goff, 421 F.3d at 794.

Based on the foregoing, the undersigned finds the ALJ's step five determination is supported by substantial evidence.

## IV. Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. Plaintiff's Complaint is dismissed with prejudice.

Dated this 19th day of October, 2015.

s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE